IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RITA M. PEARSON, : | |
| : | Case No. 2:20-cv-00154 |
| **Plaintiff,** : | |
| : | Judge Algenon L. Marbley |
| v. : | Magistrate Judge Elizabeth P. Deavers |
| : | |
| FRANK KENDALL III, : | |
| Secretary of the Air Force, : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before this Court on Defendant Secretary of the Air Force's Motion for Judgment on the Administrative Record ("Motion"). (ECF No. 33). For the reasons set forth below, the Motion is **GRANTED**.

### I. BACKGROUND

This case arises from Plaintiff Rita M. Pearson seeking benefits under the Reserve Component Survivor Benefit Plan ("RCSBP"). (ECF No. 1 at 5). Plaintiff is the surviving spouse of Master Sergeant Loren K. Pearson ("Mr. Pearson") who served the United States Air Force Reserve prior to his retirement and death. (*Id*. ¶ 3). Plaintiff alleges that the Air Force Board for Correction of Military Record ("Board") wrongfully denied her survivor benefits. (*Id*. at 1).

#### A. Electing Benefits Under the RCSBP

On April 12, 1994, Mr. Pearson received a letter from the Air Reserve Personnel Center ("ARPC") informing him that he had completed the required years of service and would be entitled to retired pay upon application at age 60 ("Notification Letter"). (ECF No. 6-1 at Ex. A). The letter includes Mr. Pearson's signature, dated June 8, 1994. (*Id*). The letter served as a notification of eligibility to participate in the RCSBP under which participants' designated beneficiaries were

permitted to receive a monthly annuity in the event of the participant's death. (*Id.*).  The letter offered three options for the monthly annuity: Option A, defer election to age 60; Option B, annuity to begin on date reaching age 60; and Option C, immediate annuity. (*Id.*). The letter further provided that "within 30 days you should receive detailed information on RCSBP by certified mail" ("RCSBP Package"). (*Id.*). The RCSBP Package, according to the ARPC, notified the member of a 90-day election window from the date of receipt of the RCSBP Package and included detailed information about RCSBP options and their effects. (ECF No. 32-1 at 68, 88–96). The ARPC, however, did not have a copy of the version sent in 1994 but claimed the current version used during their review is largely unchanged besides statutory changes. The ARPC stated these changes did not impact the explanation of the options available or their effects. (*Id.*).

On April 28, 1994, the RCSBP information was delivered to Mr. Pearson via certified mail. (ECF Nos. 32-1 at 35, 40; 33 at 2; 34 ¶ 3). Plaintiff emphasized that their 13-year-old son signed for the certified mail and that "ARPC has no actual knowledge of proof of delivery since a minor child accepted the delivery." (ECF No. 33 at 2). Even so, a receipt (PS Form 3811) signed by the 13-year-old son was returned to the ARPC indicating the certified mail was delivered on April, 28 1994. (ECF No. 32-1 at 35). The parties cannot confirm the certified mail received that day was indeed the RCSBP Package, but the April 28, 1994, date corresponded with the 30-day window specified in the Notification Letter and corresponded with the election window provided in the RCSBP Package.  (ECF No. 32-1 at 36).

Upon receiving information about RCSBP eligibility, Plaintiff alleges that Mr. Pearson completed ARPC Form 123, the RCSBP Election Certificate ("Election Certificate"). (ECF No. 6-1 at Ex. B). The Election Certificate provided by Plaintiff showed that Mr. Pearson elected Option C "to provide an immediate annuity beginning on the day after my death, whether before or after

2

age 60." (*Id.*). Under "Family Information" the Election Certificate included Plaintiff and three children. (*Id.*). The signature line bore Mr. Pearson's signature dated June 8, 1994. (*Id.*). Plaintiff maintained that the Election Certificate was returned as required. (ECF No. 34 ¶ 7). Plaintiff also demonstrated that Mr. Pearson received a RCSBP Computations form, dated April 22, 1994, displaying Mr. Pearson's estimated computations for selecting Option C for a spouse and child. (*Id.* at 6; ECF No. 6-1 at Ex. C).

Contrary to the Plaintiff's records, the ARPC alleged never receiving Mr. Pearson's election. Instead, upon belief that Mr. Pearson did not make an election by the end of the election window, the default election was entered on his behalf on July 26, 1994. (ECF No. 32-1 at 36; ECF No. 33 at 2). The default election at the time was Option A: defer election to age 60. (*Id.*).

On December 30, 1996, Mr. Pearson retired from the Air Force Reserve. On July 16, 2011, Mr. Pearson died at age 57, leaving behind Plaintiff and his three children. (ECF No. 34 ¶ 7).

### B. Application for Correction of Military Record

After Mr. Pearson's death, Plaintiff was informed that she was not entitled to his retirement benefits. (ECF No. 32-1 at 24). Plaintiff asserted that in November 2011, upon sorting through Mr. Pearsons personal papers, she found a copy of Mr. Pearson's Notification Letter, Election Certificate, and Computations. (ECF Nos. 34 ¶ 8; 1 ¶ 12). She subsequently applied to the Board to correct Mr. Pearson's record. (ECF Nos. 34 ¶ 8; 32-1 at 26; 1 ¶ 12). She explained that she hoped the "oversight could be corrected" and enclosed, as directed, along with Mr. Pearson's death certificate and Form NGB 22. . (ECF No. 32-1 at 26).

In January 2012, the ARPC recommended denying the application. (*Id.* at 27). In the recommendation, the ARPC explained that the RCSBP Package was sent to Mr. Pearson on April 28, 1994, and he was automatically enrolled in Option A on July 26, 2024, because he did not make

3

an election. (*Id*.). The recommendation also stated that Mr. Pearson was afforded two opportunities to change his election during Open Enrollment Seasons in 1999-2000 and 2005-2006. (*Id*.). The ARPC concluded that relief should be denied because Mr. Pearson did not elect to participate in the plan. (*Id*.).

Plaintiff responded to the ARPC's recommendation in February 2012. (*Id*. at 40). In her response she expressed her disappoint that the document that required signature was initially sent to the wrong address, and that two weeks later it was sent to the correct address, but her under-aged 13-year-old son signed for the certified letter. (*Id*.). She explained that she had no idea where the documents "ended up" and suggested Mr. Pearson "never actually saw the [c]ertified [l]etter" because he would not neglect anything that important. (*Id*.).

In September 2012, the Board issued a decision denying Plaintiff's application to correct Mr. Pearson's military record. (*Id*. at 19-21). The Board found that Plaintiff exhausted all remedies and timely filed the application, but insufficient relevant evidence was presented. (*Id*.). Plaintiff did not provide any evidence of error to overcome the evidence that Mr. Pearson was notified and given the opportunity to elect benefits but failed to do so. (*Id*. at 21). The Board explained that the application would be reconsidered only upon submission of new relevant evidence not considered with the initial determination of the application. (*Id*.).

Plaintiff applied for reconsideration in October 2015. (*Id*. at 44). In her Complaint and Opposition to the Motion, Plaintiff indicated finding a copy of the Notification Letter, Election Certificate, and Computation form in November 2011. (ECF Nos. 1 ¶ 12; 34 ¶ 8). When requesting reconsideration, however, Plaintiff explained she found the Election Certificate in 2015 when going through Mr. Pearson's belongings. (ECF No. 32-1 at 44). Nonetheless, Plaintiff submitted

4

the Election Certificate with her request for reconsideration, hoping that the "new evidence will change [the Board's] previous decision." (*Id*.).

The Board, in March 2017, reconsidered Plaintiff's application to correct Mr. Pearson's military record in light of the newly submitted Election Certificate. (*Id*. at 46). The Board recognized that the Election Certificate reflected Mr. Pearson named Plaintiff as the RCSBP beneficiary and that he elected spouse and children coverage based on full retired pay. (*Id*.). The Board concluded that the Election Certificate, alone, did not overcome the evidence that: (1) the election was not submitted, thus automatically declining an election until age 60; and (2) he was afforded two options to enroll during Open Seasons to in 1999-2000 and 2005-2006. (*Id*. at 46). As such, Plaintiff's request for correction of the military record was denied again and the Board allowed reconsideration upon submission of newly discovered evidence. (*Id*.).

In March 2019, Plaintiff returned to the Board with legal representation and requested reconsideration. (*Id*. at 50). The request for reconsideration included a copy of the Notification Letter, Election Certificate, the Computations. (*Id*. at 52–56). The request argued that the applicable 1994 law required spousal notice for an election not to participate and that Mr. Pearson failed to enroll during the open seasons because he believed he made his election. (*Id*.). The request for reconsideration was denied for lacking any new evidence. (*Id*. at 60).

### C.  Remand to the Board

In March 2020, Plaintiff filed the Complaint seeking reversal of the Board's final decision. (ECF No. 1). Plaintiff alleged the Board erred in refusing to correct the military record, and Defendant violated 10 U.S.C. §1448 by failing to obtain spousal concurrence. (ECF No. 1). Defendant filed an unopposed motion for remand and noted that the Board did not address whether the notification requirements of §§ 1455 and 1448 were met. (ECF Nos. 19, 20). In June 2020, this

5

Court granted the motion to remand and the case was remanded to allow the Board to determine whether the Air Force notified Plaintiff as required by applicable law. (ECF No. 20).

On remand, the Board, as directed by this Court, addressed "whether the [ARPC] notified the applicant, in compliance with Title 10 United States Code Sections 1448 and 1455, that her late husband failed to elect participation in the Reserve Component Survivor Benefit Plan (RCSBP) at the maximum level." (ECF No. 32-1 at 63). The ARPC submitted an analysis of the appliable law in 1994 and recommended a finding that: (1) in 1994, the ARPC was not required to notify Plaintiff of failure to elect RCSPB coverage; and (2) the ARPC provided satisfactory notice of the RCSBP options and consequences of failure to elect. (*Id*. at 68–69). The ARPC also explained that Plaintiff submitted insufficient evidence to suggest that Mr. Pearson made the timely election required. The Election Certificate Plaintiff provided ten years after the election deadline was insufficient to show injustice. (*Id*. at 69).

In April 2023, after nearly three years on remand, the Board issued a decision denying Plaintiff's request to correct the military record and determining that there was insufficient evidence of any error or injustice. (*Id*. at 3). The Board concurred with ARPC's rationale and recommendation and concluded that the ARPC was not required to notify Plaintiff of failure to elect participation in the RCSBP because the requirement was eliminated in a 1985 amendment. (*Id*. at 16). The Board also noted that whether notice that Mr. Pearson failed to elect participation in the RCSBP at the maximum level is irrelevant because Mr. Pearson, instead, did not make any election in the 90-day statutory election window. (*Id*.)

In August 2023, Plaintiff moved to reopen this case, arguing the Board provided no evidence establishing it "notified Plaintiff" and did so "in compliance with 10 U.S.C. §§ 1448 and 1455." (ECF No. 22). Plaintiff seeks reversal of the Board's final decision and an order for the

Board to correct the military record to reflect Plaintiff's entitlement to survivor benefits. (ECF No. 34 at 2). The Complaint includes two causes of action: (1) the refusal to correct military records; and (2) violation of §1448 by not obtaining spousal concurrence. (ECF Nos. 1 ¶¶ 18–25; 34 at 8). Defendant moved for judgment on the administrative record under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. (ECF No. 33 at 1).

## II. STANDARD OF REVIEW

Under the APA, courts have authority to hold unlawful and set aside any final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, the court must ensure the agency "has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Chamber of Com. of United States v. Sec. & Exch. Comm'n*, 115 F.4th 740, 749 (6th Cir. 2024) (quoting *Oakbrook Land Holdings, LLC v. Comm'r*, 28 F.4th 700, 720 (6th Cir. 2022)). Courts may not "substitute [their] judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009).

Plaintiff applies the summary judgment standard under Fed. R. Civ. P. 56 in response to Defendant's Motion. (ECF No. 34 at 5). Plaintiff relies on *Nickerson v. United States*, 35 Fed. Cl. 581, 588 (1996), aff'd, 113 F.3d 1255 (Fed. Cir. 1997), and argues "the court treats a motion for judgment based on the administrative record similar to a motion for summary judgment under RCFC 56(a)." (ECF No. 34 at 5). The United States Court of Federal Claims has since recognized that "a motion for judgment on the administrative record under Rule 52.1 of the Rules of the United

7

States Court of Federal Claims ("RCFC") differs from motions for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment on the administrative record." *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242–43 (2011); *see also Lippmann v. United States*, 127 Fed. Cl. 238, 244 (2016); *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)).

Plaintiff's application of Fed. R. Civ. P. 56 is improper. As this Court has held: "[w]hereas a motion for summary judgment pursuant to Fed. R. Civ. P. 56 requires a court to determine whether there are genuine issues of material fact, the 'usual rules governing summary judgment do not apply' in cases brought pursuant to the [APA]." *Simaga v. United States Citizenship & Immigr. Servs*, No. 2:21-cv5098, 2023 WL 5209531, *2 (S.D. Ohio Aug. 14, 2023) (quoting *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship and Immigr. Servs.*, 131 F. Supp. 3d 721, 725 (S.D. Ohio 2015))). Rather than asking if a genuine issue of material fact exists, "courts must ask 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" (*Id*. quoting *Ohio Valley Env't Coal. v. Hurst*, 604 F. Supp. 2d 860, 879 (S.D. W.Va. 2009)).

### III. LAW AND ANALYSIS

Defendant argued that the Board's decision was proper because Plaintiff failed to provide sufficient evidence to justify granting her request. (ECF No. 33 at 17). Defendant also asserted that the applicable law for the RCSBP did not require spousal concurrence or notification, so the decision was not contrary to law. (*Id*.).

#### A. Refusal to Correct Military Records

A military record may be corrected "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1), (a)(3). The Board, consisting of civilians

8

"who are appointed and serve at the pleasure of the Secretary of the Air Force" must decide whether an applicant has "demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record, and, if so, what corrections are needed to provide full and effective relief." 32 C.F.R. §§ 865.1, 865.4(h)(4). Defendants referenced and provided with their Motion a Department of Defense Directive, DoDD 1332.41, which provides a policy and responsibilities for boards for correction of military records. (ECF No. 33-2 at 87). Under DoDD 1332.41, "[b]efore granting relief, sufficient evidence justifying the relief must be on the record or provided by the applicant. Relief shall be denied if there is insufficient material evidence in the record or provided by the applicant to warrant relief."

Defendant maintained that the Board's decision denying Plaintiff's request to correct Mr. Pearson's record was not arbitrary and capricious. (ECF No. 33 at 17). Plaintiff's request required the Board to correct Mr. Pearson's record to reflect that he made a benefit election within the required 90-day window. To support her request, Plaintiff provided the Notification Letter (dated April 12, 1994), an RCSBP Computations form for Option C (dated April 22, 1994), and the Election Certificate electing Option C (signed June 8, 1994). (ECF No. 32-1 at 50-56). She also submitted a declaration, indicating that she found a photocopy of the documents in Mr. Pearson's personal papers after his death. She explained she observed Mr. Pearson's habits but has never seen him keep photocopies of documents if he also had the original, but that he mails or delivers the originals. (*Id*. at 125). Defendant argued the documents provided do not indicate Mr. Pearson carried through with any intention to submit an election after signing the Election Certificate on June 8, 1994. (*Id*.).

Indeed, the ARPC sought proof the election was timely submitted, not that Mr. Pearson intended to make an election. The Election Certificate indicates that "[a]n election will not be in

9

effect if not received by ARPC within the 90-day deadline date." (ECF No. 6-1 at Ex. B) With no evidence that the election was received—or even should have been received—by the ARPC, the Board's decision to deny relief was not arbitrary or capricious. On the other hand, Plaintiff's declaration submitted to the Board asserts that the existence of a photocopy indicates Mr. Person mailed or delivered the Election Certificate. (ECF No. 32-1 at 125). All the same, not accepting this declaration as proof of receipt of the election within the 90-day deadline is not "arbitrary, capricious, unsupported by substantial evidence, contrary to law, and an abuse of discretion." (ECF No. 34 at 8). This Court's review is limited to finding whether the Board's "decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905, 207 L. Ed. 2d 353 (2020) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The Board reasonably concluded that a photocopy of an election is not proof that the election was received by the ARCP. Moreover, in response to Defendant's Motion, Plaintiff has not provided any argument to support that the election was received. (ECF No. 34). Accordingly, the Motion is **GRANTED** with respect to the Board's refusal to correct the military records based on the evidence the Board received.

### B. Requirements under 10 U.S.C. §§ 1455 and 1448

In her Complaint, Plaintiff also alleged violation of 10 U.S.C § 1448. (ECF No. 1). Additionally, in the unopposed Motion to Remand, Defendant suggested remand because the Board failed to address the requirements under § 1448 and § 1455. (ECF No. 19). On remand, this Court directed the Board to answer whether notification requirements under §§ 1455 and 1448 were met; and the Motion to Reopen this case argued the Board failed to address both sections.

10

(ECF No. 20). While Plaintiff only argued failure to comply with § 1448 in response to Defendant's Motion, this Court will address both §§ 1455 and 1448.

Turning first to § 1455, In 1994, the section mandated that regulations were to be issued requiring notification—to the member and member's spouse—of the elections available under § 1448 before they are entitled to retired pay. 10 U.S.C. § 1455 (a)(1)(1994). Instead, Defendant argued that § 1331 was relevant for notification requirements and Plaintiff did not respond to this statute reference. Under § 1331, a reserve or national guard member is entitled to retirement pay when serving 20 years and attaining the age of 60. 10 U.S.C. § 1331(a) (1988). As such, § 1455 was inapplicable for notification requirements here as Mr. Pearson was not entitled to retirement pay. A notice, nonetheless, was required for "each person who has completed the years of service required for eligibility for retired pay." 10 U.S.C. § 1331(d) (1988). Section 1331 also provided that "[t]he notice must be sent, in writing, to the person concerned within one year after he has completed that service." *Id*. The notice had to include the elections available under the plan. *Id*. Mr. Pearson was sent the Notification Letter and RCSBP Package after attaining the service requirement and before attaining the age of 60. Plaintiff emphasized that information was sent through certified mail and her underage 13-year-old son was allowed to sign for it. (ECF No. 34 ¶ 3). At any rate, while Plaintiff has not provided a copy of the RCSBP Package allegedly sent through certified mail, Plaintiff provided copies of the Notification Letter and Election Certificate which notified Mr. Pearson of his eligibility to participate in the plan and his election options in 1994. (ECF No. 6-1). Thus, requirements under § 1455 were inapplicable and the notice requirements under § 1331 were met.

As for the 1994 requirements under § 1448, different rules for spousal concurrence applied for members of the regular component and the reserve component. Plaintiff argued that § 1448

favored awarding Plaintiff annuity benefits as reflected in the Election Certificate because § 1448 required Mr. Pearson to obtain Plaintiff's signature acknowledging Plaintiff would not be receiving survivor benefits had he chosen that option. (ECF No. 34 at 8). Plaintiff relies on § 1448(a)(3)(A)(i) which provides that "[a] married person who is eligible to provide standard annuity may not without the concurrence of the person's spouse elect not to participate in the plan . . . ." 10 U.S.C. § 1448(a)(3)(A)(i) (1988). This section, however, does not apply to the reserve-component annuity.

The RCSBP was governed by the reserve-component rule under § 1448(a)(2)(B) which provides eligibility for those who would be eligible for the regular component but for the fact that they are under 60 years old. 10 U.S.C § 1448(a)(2)(B) (1994). The 1994 version of § 1448 required spousal concurrence for the reserve-component when a servicemember *elected* to provide a reserve-component annuity: (1) for a spouse at less than the maximum level; or (2) for a dependent child but not the person's spouse. § 1448(a)(3)(B). Here, Plaintiff did not provide sufficient evidence for the Board to find Plaintiff made any election. This spousal concurrence was not required for a regular-component annuity when not participating in the plan. *Id*.

Spousal concurrence was not required for Mr. Pearson's auto-enrollment in Option A of the RCSBP. As such, the Board's denial of correcting Mr. Pearson's military record was not contrary to law and Defendant is entitled to judgment on the administrative record in its favor.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment on the Administrative Record (ECF No. 33) is **GRANTED**. Accordingly, the Board's decision is **AFFIRMED,** and this case is **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 25, 2025**